## Taulbee v. Hargis, et al.

(Decided January 26, 1917.)

### Appeal from Breathitt Circuit Court.

1. Limitation of Actions—Pleading.—The statute of limitations can not be made effective by demurrer, but if one would avail himself of the lapse of time as a peremptory bar to the maintenance of a cause of action, he must rely upon it as a plea in his answer.

2. Usury—Purging Debt of Usury.—Though a debt may be often renewed by the giving of new obligations instead of the old, and with obligors, other than those originally bound, as long as the original obligor remains bound, all usury may be purged from the transaction.

3. Limitation of Actions—Usury.—A mere change in the name of the payee, in a new obligation, executed in renewal of a usurious debt, does not pay the usury embraced in the old obligation and carried into the new one, nor set the statute of limitations to running, where the old obligee is still the real and beneficial owner of the debt.

4. Usury—Purging Debt of Usury.—Where an heir, devisee or personal representative, of the holder of a usurious obligation, comes into the ownership of it by reason of being such heir, devisee or representative, and the debt is renewed by the execution of a new note containing the usury, and payable to the heir, devisee

or personal representative, it is not a payment of the usury in the old obligation, and the new note can be purged of all the usury in the transaction.

5. Usury—Purging Debt of Usury.—If an heir receives a usurious note, which was payable to the intestate and is transferred to the heir in lieu of his portion of the distributable estate, and is thereafter renewed by the execution of a new note, payable to the heir, it can only be purged of such ratable portion of the usury as the heir would have inherited from the intestate.

6. .Usury—Purging Debt of Usury.—If a residuary devisee receives a usurious obligation from the executor, as a portion of the residuary estate, and the obligation is renewed by the execution of a new obligation to the devisee, it may still be purged of all the usury contained in it, because the devisee loses nothing thereby.

7. Usury — Limitation of Actions. — The mere assignment of a usurious obligation does not pay the usury in it, nor set the statute of limitations to running, because it is the same usurious obligation, and no payment of it has occurred by novation or otherwise.

8. Usury—Estoppel.—If the obligor in a usurious obligation urges, induces or procures an innocent third person, without knowledge of the usury in the obligation, to become the purchaser of it for a valuable consideration, the obligor is estopped to complain of the usury against the innocent holder, and must look to the former usurious holder for reclamation when the usury is paid.

9. Usury—Estoppel.—If the assignee of a usurious obligation takes it with knowledge that it contains usury, and thereafter the obligor discharges it by executing a new obligation to the assignee, he is not estopped to complain of the usury, as against the assignee, the payee in the new obligation.

10. Usury—Holder for Valuable Consideration.—If an innocent third party, without knowledge of the fact that an obligation embraces usury, becomes the holder of it for a valuable consideration, and thereafter the obligor discharges it by executing a new obligation to the innocent holder, and the assignor of the old obligation is discharged from liability, the obligor can not complain of usury in it against the new payee, and when he pays it he can not sue the payee in the new note to reclaim the usury.

11. Usury.—A suit can not be maintained to reclaim usury until it has been paid.

12. Usury—Suit to Reclaim.—The payor of a usurious debt may elect to treat all the payments, which have been made upon the debt, as payments upon the legal interest and principal, and in such case a suit to reclaim the usury can not be maintained until the entire debt is discharged.

13. Principal and Agent—Knowledge of Agent.—The knowledge of an agent is imputed to his principal, unless the agent is engaged in a transaction, in which his interests are adverse to those of the principal, or where he is engaged in a scheme to defraud his principal, and in such state of facts, his knowledge is not imputed to the principal.

14. Corporations—Fraud Upon Corporation—Notice.—Where an officer of a corporation represents the corporation in a transaction wherein he commits a fraud upon another corporation, of which he is an officer, the first mentioned corporation is charged with notice of the nature of the transaction, although the fraud is committed for the benefit of the agent.

O. H. POLLARD and KELLY KASH for appellant.

BYRD & HURST and HAZELRIGG & HAZELRIGG for appellees.

Opinion of the Court by Judge Hurt—Reversing as to appellee, A. H. Hargis, upon original appeal, and affirming as to appellee, Hargis Commercial Bank, upon both the original and cross appeals.

The appellant, S. S. Taulbee, sought to recover, in this action, the sum of $2,705.08 from the appellees, A. H. Hargis and the Hargis Commercial Bank, which he alleged he had paid to them as usury. The court sustained a general demurrer to the petition and petition as amended, as far as any cause of action was attempted to be stated, as against the appellee, A. H. Hargis, and the petition as to him was dismissed. The Hargis Commercial Bank filed an answer and issues were formed between it and appellant, proof was taken and upon final hearing, a judgment was recovered against it, by the appellant, for the sum of $467.97, with interest from April 19th, 1913, until paid, and the petition, in so far as it sought any recovery in excess of this sum against the Hargis Commercial Bank, was dismissed. The appellant appealed from both the judgment in favor of A. H. Hargis and from the judgment denying a recovery against the bank for any of the sum sued for in excess of $467.97. The Hargis Commercial Bank has taken a cross-appeal from the judgment against it.

(1.) The first question, for determination, is the soundness of the judgment, which sustained the general demurrer filed by A. H. Hargis, and resulted in the dismissal of the action, as to him. A consideration of the allegations of the petition and amended petition become necessary. The petition as amended shows substantially, that all the money borrowed, and which was the consideration for the original note and its various renewals, was the sum of $4,743.92, borrowed on September 17th, 1907, and $4,431.83, borrowed on the 19th day of September, 1908; that interest was calculated upon

these amounts at ten per centum per annum and included in the notes and that at each renewal, the interest at ten per centum, per annum, was ascertained upon the amount of the old note and included in the new; that these notes were all executed to A. H. Hargis, and made payable in one year from the date of the renewals, until the one executed on April 12th, 1911, when the note was for the sum of $11,988.90, when it was assigned by Hargis to the Hargis Commercial Bank, and, thereafter, at the request of Hargis, it was renewed on April 12th, 1911, by the execution of a new note to the Hargis Commercial Bank and payable on April 12th, 1913, and that upon its execution ten per centum per annum interest was ascertained and included in the note; that it was renewed again to the Hargis Commercial Bank, at the request of Hargis, on April 12th, 1913, but within a few days thereafter, was fully paid off and satisfied; that at the time it was assigned to the Hargis Commercial Bank, it had full knowledge of the usury embraced in it, and that upon the payment of the second note executed to the Hargis Commercial Bank, there was paid $2,705.08 usurious interest, which appellant was compelled to pay to secure the release of his property, which was mortgaged to secure the note and had been mortgaged as a security for the indebtedness from the execution of the first note. The petition was filed on the 18th day of April, 1914, and when considering the demurrer, the averments of the petition must be taken as true. It appears that Hargis was the lender of the money and it was he who exacted the usurious interest for its loan. The statute, section 2219, subsection 2, Ky. Statutes, specifically, provides that the excess of interest, over the legal rate, charged for and paid for the loan or forbearance of money, may be recovered from the lender, although paid to his assignee. The petition shows, beyond question, that a large sum of usurious interest was paid by the appellant and that the note discharged finally by him contained the usury, which was embraced in the first note and each of the renewal notes. It is well settled, that the cause of action for the reclamation of usurious interest arises when it has been paid. Marion National Bank v. Thompson, 101 Ky. 277; Breckinridge v. Churchill, 3 J. J. M. 11; Rodes v. Bush, 5 Mon. 467; Hodges v. Owens, 5 Mon. 91; Anderson v. Trimble, 18 R. 507; Rudd v. Anderson, 12 R. 489; Smith v. Young,

11 Bush. 393; Parker v. Zweigart, 22 R. 113. The debtor may elect to have all payments made by him upon the indebtedness to be treated as payments, first, upon the legal interest and principal, and in such case, no usury can be sued for, until the entire debt has been paid. Neal v. Rouse, 93 Ky. 151; Hill v. Cornwall, 95 Ky. 536. It has often been held that the mere substitution of the name of a new payee for an old debt does not amount necessarily to a novation, and is not a payment of the usury in the old debt. The petition alleges that Hargis procured the change in the name of the payee to be made and that the debt was finally paid to him and his assignee, jointly, and that the bank did not receive the transfer in good faith, and this seems to be a transaction amounting to no more than the mere change of the name of the payee, with the assignor, in whose hands the note was usurious, as the real owner of the note. It is insisted that the petition as amended, upon its face, shows that the cause of action, against Hargis for usury embraced in the note, is barred by the statute of limitations, and for that reason that the demurrer was properly sustained. The rule formerly was, that if one desired to make use of the statute of limitations as a bar, he was required to rely upon it, by way of a plea in his answer, unless the petition showed, not only that the cause of action was barred, but that there did not exist any ground for the avoidance of the statutory bar. This doctrine was announced in Rankin v. Turner, 2 Bush. 555, and causes preceding it and since. The case, *supra,* was an action for the recovery of usury, which had been paid. The petition showed that more than one year had elapsed after the cause of action had accrued before the action was instituted. The circuit court sustained a demurrer to the petition, but upon appeal to this court, the judgment was reversed, the court announcing the above rule. Since, however, a different rule has been established, upon the theory that a defendant has a right to waive the statute, if he desires to do so, and if he would avail himself of lapse of time as a peremptory bar to the maintenance of a cause of action against him, he must interpose the statute by a plea to that effect. Barker et al. v. Begley, 155 Ky. 234; Yager's Admr. v. Bank of Kentucky, 125 Ky. 184; Swineboard v. Wood, 123 Ky. 675; Childers v. Bales, 124 S. W. 295; Green County v. Howard, 127 Ky. 385; Jolly v. Miller, 124 Ky.

115; Davie's Extr. v. City of Louisville, 159 Ky. 252. Hence, the court was in error in holding that the petition as amended did not state a cause of action against appellee, Hargis, and dismissing the action as to him.

(2.)   The facts as disclosed by the evidence taken upon the issues made between the appellant and the Hargis Commercial Bank, are not involved with any contradiction, so far as affects the rights of the bank. There is some disagreement between the testimony of appellant and appellee, Hargis, who testified as a witness for the bank, as to what sums were embraced in the original note and renewals, and when it was that the ten per centum interest was agreed to be paid and embraced in the notes, but there is not any contrariety of statement, as to the amount of either of the notes or when executed. There is not any claim by appellant of any fraud or mistake or overreaching having occurred with regard to the execution of the original note and its various renewals, but it is simply a question of how much usury was embraced in the notes and from whom appellant may reclaim it. The note for the original debt was secured by a mortgage upon the real estate and each renewal of that note was similarly secured. The notes were made payable to A. H. Hargis, but negotiable at some banking institution named in the notes, and the note which was executed on April 12th, 1911, and which became due on April 12th, 1912, for the sum of $11,-988.90 was payable to A. H. Hargis, but negotiable and payable at the First National Bank, of Jackson. On November 21st, 1911, A. H. Hargis sold this note to the Phoenix & Third National Bank, of Lexington, Ky., and endorsed it to the purchaser by writing his name across the back of it. The Phoenix & Third National Bank paid him for the note an amount equal to the sum called for in the note, less a discount of six per cent., which amounted to $281.74. The amount for which the note was sold was deposited to the credit of A. H. Hargis, and he used it in purchasing stock in the Hargis Commercial Bank, which was a banking corporation, then under process of being organized. When it was organized and commenced to do business, A. H. Hargis became its president and has been since that time. Thereafter, the Phoenix & Third National Bank proposed to sell the note of the appellant to the Hargis Commercial Bank, which accepted the offer and purchased the note on the

22nd day of January, 1912, at a six per cent. discount, which amounted to the sum of $165.80. It was transferred to the Hargis Commercial Bank by the Phoenix & Third National Bank, without recourse.

When the proposition was made to the Hargis Commercial Bank to purchase the note, the matter was submitted to the committee of directors of the institution, which had control of the purchase and discounting of securities and it was determined to make the purchase of the note. When the note was transferred to the Phoenix & Third National Bank, its officers had no knowledge of the fact, that the note contained any usury or any other infirmity, and when it was purchased by the Hargis Commercial Bank, none of its officers, with the exception of A. H. Hargis, had knowledge, that it contained any usury, nor any reason to believe that there was any infirmity in the note. When the note became due, appellant, on the 12th day of April, 1912, executed a note to the Hargis Commercial Bank for the sum of $12,648.10, due and payable on April 12th, 1913. This note embraced the unpaid portion of the note which had been purchased from the Phoenix & Third National Bank and ten per cent. interest thereon for one year, which was added to the amount of the note, and he executed a mortgage to secure its payment. The note which was executed to Hargis on April 12th, 1911, and by him transferred to the Phoenix & Third National Bank, and by it to the Hargis Commercial Bank, was cancelled and turned over to the appellant. When the note last mentioned became due on April 12th, 1913, appellant renewed the debt by the execution of another note for it, but in five or six days, thereafter, discharged it, by paying the amount of it to the Hargis Commercial Bank. There does not seem to be any controversy, as to the amount of new usury, which was ascertained and included in the first note executed by appellant to the Hargis Commercial Bank, and paid by him, when he discharged the note—the sum being the amount for which the court rendered judgment in appellant's favor against the bank. There can be no doubt that appellant should have had judgment for that sum, as it was beyond question usurious interest and was paid to the bank. The question for determination is: Is appellant, under the facts, entitled to recover of the Hargis Commercial Bank the entire amount of usury, which he paid

for the loan of the money, which he borrowed from Hargis, from the beginning? The large number of cases which have been decided by this court, from its organization until now, and which deal with questions of usury, and the great difference in the facts of the cases, and the different requirements of the statute laws relating to usury, have caused many expressions in the different opinions, which make many of them very difficult of reconcilement with each other. It is unnecessary for the decision of the question here, to concern ourselves with what may be the relative rights of appellee, Hargis and appellant, as the issues between them have never been made, and a discussion of same upon a supposed state of facts, might lead to confusion. The bank insists that it was an innocent purchaser, for value, of the note, which appellant had executed to Hargis and that it was without knowledge of the usury embraced in it and that appellant having discharged this note by executing a new one payable to it and thereby procured it to release Hargis, as an endorser of the note, that while it is liable for the new usury which it put in it, it is not liable for the old usury, which was embraced in it, when it was transferred to it, and which was carried into the new note from the old. In other words, while Hargis might be liable to appellant for the usury, which was in the old note, the bank is liable only for the usury, which it exacted, as the new note, in its hands contained no other usury. In the earlier decisions of this court, it was held that a change in the obligors, in an obligation given in renewal of a prior debt, was a novation, which had the effect to discharge the old obligation, as if paid, and to set the statute of limitations running, as to any usury embraced in the old obligation, but the consideration for the new obligation should be deemed to be valid, although it in fact embraced the usury in the old obligation. However, this doctrine has long since been abandoned, and for many years, it has been held, that, although the obligation given in renewal of a debt containing usury, should be signed by obligors, other than those originally bound, if the original obligor is still bound, all usury may be purged from the transaction, as long as the original obligor remains bound. Hill v. Cornwall, 95 Ky. 536; Harp v. Hayden, 79 Ky. 346; Rudd v. Planters' Bank of Kentucky, 78 Ky. 513. It will be observed that under

this rule the usury may be complained of, only, so long as the original obligor is bound. It would seem, that if a transaction should be had, by which an old obligation is discharged by the execution of a new one, which has for its undertaking an obligation to pay a new payee, other than the one named in the old obligation, that this would amount to a payment of usury embraced in the old obligation, and that the new one would have a consideration, which was free from taint. It has, however, been held, that a mere change in the name of the payee, in the new obligation, given in discharge of an old one, and in satisfaction of it, is not a payment of usury embraced in the old obligation and it may still be complained of. In support of this doctrine, Fitzpatrick v. Apperson, 79 Ky. 272, and Shirley v. Stevenson, 104 Ky. 518, are invoked, and other cases, wherein, the language of the opinions in those cases, has been referred to and approved, although in many of the cases the change in the name of the payee was not involved. A reading of Shirley v. Stevenson, *supra,* demonstrates that the court in that opinion had in mind the mere substitution of the name of a new payee for some hidden purpose, when the obligee, in fact, and the beneficial holder of the paper was the same old payee. In that case Shirley owed a debt to Stevenson, which was evidenced by a note. This note was, presumably, given up to Shirley and, in place of it, he executed a note payable to two of Stevenson's daughters, and thereafter the debt was again secured by the execution of another note to Stevenson's wife, and the note payable to the daughters given up to Shirley, and upon another appeal to this court it was decided, that the change of one payee to another in that case was valid and a in good faith transaction, in each instance, and that the wife could not be made liable for usury paid by Shirley to either the daughters or to Stevenson, the original obligee in the debt. Stevenson v. Shirley, 60 S. W. 387. In Fitzpatrick v. Apperson, *supra,* Apperson had been the attorney for a bank, and as such had recovered a judgment in favor of the bank against Fitzpatrick, under which Fitzpatrick's lands were sold, and thereafter Apperson became the owner of the unpaid judgments, and notes were executed to him by Fitzpatrick and another in satisfaction of the judgments. Apperson, being attorney for the bank and acquainted with the usury

in the transaction, was not an innocent holder for a valuable consideration. It has, also, been consistently held, that an heir or devisee or the administrator of the holder of a usurious obligation, and who comes into possession of it by reason of being an heir, devisee or personal representative of the original holder, and the obligation is renewed to such heir or devisee, or personal representative that it is not a payment of the usury in the old obligation, and the new one can be impeached because of the usury. Smith v. Broyles, 15 B. M. 461; Humphreys v. Pearce, 1 Duvall 237; Eggen v. Houston, 11 R. 235, 13 S. W. 919, and many others. It was, however, held that where an heir received a usurious note, which had been executed to his intestate, in lieu of the heir's part of the distributable estate, and then at the request of the obligors in the note, gave it up, and in place of it or in satisfaction of it, they executed a new note, payable to the heir, it was held upon a plea of usury against it, that only the heir's portion of the usury embraced in his ancestor's note, which would have been inherited by him, should be eliminated. Perrin v. Ammerman, 2 Ky. Opinions, 616. In Smith v. Broyles, *supra,* in accordance with this principle, it was held that where a residuary devisee, who has re ceived a note from the executor, which contained usury as a portion of the residuary estate and the note was renewed to him by a new note, the usury may be deducted from the note for the reason that the residuary devisee has lost nothing by the execution of the new note.

The mere assignment of a usurious obligation does not pay the usury, nor set the statute of limitations to running, because it is the same usurious obligation, and no transaction has occurred sufficient to make a novation, which could be deemed a payment of the note and a discharge of it. In Parker v. Zweigart, 22 R. 113, it was broadly stated, that a mere assignment carried with it into the hands of the obligee the taint of all the usury that was contained in it. There is, however, a line of cases, as Blades v. Newman, 19 R. 1063; Smith. v. Stone, 17 B. M. 171; McBrayer v. Collins, 18 B. M. 664; Wooldridge v. Cates, 2 J. M. 223, in which the principle is recognized, that if an obligor in a usurious note or obligation urges, induces, or procures an innocent third party to purchase the note and take an assignment

of it without knowledge of its infirmity, the obligor will be estopped from setting up a plea of usury to its collection. The case of Ryan v. Logan County Bank, 21 R. 1518, holds that no claim of usury can be made against one, who is an innocent purchaser of a note for value, which contains usury, where the obligor to induce the purchase, represented that the note was without infirmity and would be paid. Where an innocent purchaser for value, and without notice of the usury in the note, has been induced to purchase it by the obligor, the obligor is estopped to set up a claim of usury in the note as against the assignee, either before or after he executes a new note payable to the assignee, instead of the old debt, and when he executes a new note to the assignee and thereby discharges the old debt, he can reclaim the usury in it from the lender by a seasonable action for its recovery.

If the assignee of a usurious obligation takes it, with the full knowledge of the fact, that it embraces usury, and thereafter the obligor discharges it by executing a new note to the assignee for the old debt, he is not estopped nor precluded from complaining as against the payee in the new note of the usury, when it is attempted to be collected, but if an innocent third party, without knowledge of the fact, that an obligation contains usury, becomes the holder and purchaser of it for a valuable consideration, and thereafter the obligor discharges it, by exectuing a new note payable to the innocent holder for the old note, a new debt is thereby created, and the consideration for the new note will be deemed a valid one, although the usury from the old debt was carried over into the new without the knowledge of the payee, and when the obligor pays the new note, he will not have any cause of action against the payee of the new note for the usury which was brought into it from the old note nor can he resist the payment of the new note, by a plea of usury. This principle holds expressly where the obligor, by the execution of the new note, causes the assignee of the old obligation to thereby discharge from liability the assignor upon it. In such a state of facts, the usury embraced in the debt, when paid, must be reclaimed from the original lender and not from the payee in the new note. The fact that the statute, section 2219, Ky. Statutes, authorizes the recovery of usurious interest from the lender,

where it has been paid to the assignee, seems to contemplate the existence of transactions, in which it is not recoverable against the assignee. The principle above stated is declared in 39 Cyc. 1005, 1006, as follows:

"If the renewal of a usurious note be made to a new party, who takes the obligation with the full knowledge of the usury in the original note, the renewal is usurious in his hands.

"When the debtor under a usurious obligation, which has come into the hands of an innocent purchaser for value, executes a new note to such third person, he will be deemed to have waived his right to set up usury and the new note will be deemed to be upon a valid consideration . . . ."

In Clark v. Rodes, 12 Bush. 13, Rodes, as the assignor of Graham, sued Clark upon a note, which he held as assignee of Graham, and by agreement of parties, judgment was rendered against Clark upon the note. Clark thereafter paid the judgment and instituted a suit against Rodes and Graham to recover usury embraced in the note. It was held, that the agreed judgment by which Rodes released Graham as the assignor of the note was equivalent to the execution of a new note in satisfaction of the debt to Rodes, and hence amounted to a payment of the usury to Graham upon the date of the agreed judgment. Rodes was not held liable for any usury embraced in the note sued on, and the opinion of the court in that case sustains the principle above enunciated. It was, also, declared in Ryan v. Logan County Bank, *supra,* that if a new note is executed to the assignee for an old obligation containing usury of which the assignee had not knowledge and the assignor released from liability, that the debtor is estopped to complain of any usury in the new note, as against the assignee. In Stone v. McConnell, 1 Duvall 54, it was held that the execution of a new note to an assignee for an old debt, which is tainted with usury, the assignee being an innocent holder for value, that the obligor, in the new note, is estopped from complaining of usury in it, as against the payee. It was said in that case, that the new note payable to the assignee released the assignor from liability on the old note, and that the transaction amounted to a payment of the old note, and that no right of action or defense for the usury previously paid on the old obligation existed against the

payee in the second note. The same doctrine was upheld in Breckinridge v. Churchill, 3 J. J. M. 11; Clark v. Rodes, *supra;* Stevenson v. Shirley, 60 S. W. 387. The same principle is recognized in one form or another in Parker v. Zweigart, *supra;* Deatly v. Ralls, 3 R. 386; Gayle's Trustee v. Gayle, and Ky. Opns. 40; McCrae v. Gunter's Exor., 14 R. 5; Anderson v. Exchange Bank, 13 R. 735; 39 Cyc. 1078. Hence, if the holder is in good faith a purchaser for value of a usurious obligation, but without knowledge of the fact that usury is embraced in it, and the debtor obtains an extension of time in which to pay it, and induces the holder to accept a new note, payable to the innocent holder, and thereby obtains his old note, and the assignor upon the old note is thereby released from liability, the debtor, upon the payment of the new note, can not recover the usury brought forward from the old note into it, as against the payee of the new note, but must look to the lender.

(3.) The principle is well settled, that the knowledge of an agent is imputed to his principal in the absence of actual knowledge by the principal, upon the presumption that the agent will do his duty and will not fail to divulge his knowledge to his principal, but the reason for this presumption fails, when the agent is engaged in a transaction, in which his interests are adverse to the interests of the principal, or where he is engaged in a scheme to defraud his principal, and when the facts present such a state of case, it will not be presumed that the agent has communicated his knowledge to the principal, and hence the principal is not charged with knowledge of the agent. Miller v. Jones, 107 S. W. 783; 32 R. 1078; Randolph v. Ballard County Bank, 142 Ky. 145; Day v. Exchange Bank, 117 Ky. 357; Sebald v. Citizens Deposit Bank, 105 S. W. 130; Perry on Trusts, vol. 1, section 22. The cases of Mutual Life Insurance Co. v. Chosen Friends Lodge, 29 R. 394, and Citizens Saving Bank v. Walden, 21 R. 739, are cases which were decided upon the principle, that where an officer of a corporation does an act, which constitutes a fraud upon another corporation, of which he is, also, an officer, the first mentioned corporation is chargeable with notice of the nature of the transaction, although the fraud is perpetrated for his own benefit, where he, also, represents the corporation in the transaction. The case at bar does not fall within that rule, as there was

no fraud perpetrated by Hargis upon the appellant in any of the transactions, and neither does it appear that he alone conducted the transactions, by which the note was purchased from the Phoenix & Third National Bank. Neither does it appear that any fraud was perpetrated upon appellant, when he executed a note to the Hargis Commercial Bank, by which he paid off and satisfied the old note, which he had executed to Hargis, and caused the bank to release Hargis as assignor of the note. He was well apprised of all the facts in the case, nor does it definitely appear that Hargis conducted the latter transaction, but it is very apparent, that his interests in the matter were adverse to the interests of his principal, and his knowledge can not be imputed to it. It does not appear from the evidence that the discount committee of the bank, to whom the offer to buy the note was submitted, had any knowledge of any infirmity in it. Hargis did not divulge to them or to any other officer of the bank the knowledge which he possessed, and under the circumstances, the presumption would be that he failed to transmit any knowledge, which he had, to the bank, of the infirmities in the note, and hence the bank could not be chargeable with his knowledge. The evidence clearly shows that the bank was an innocent purchaser of the appellant's note for value, without notice of the usury embraced in it, and while being such holder, the appellant, who had full knowledge of the infirmity of the note, discharged it by executing a new note payable to the bank, which the bank accepted for the old note and thereby released Hargis as an endorser upon the debt. The new note, so far as the bank is concerned, is deemed to be executed for a valid consideration, except to the extent of the additional usury, which was included in the note at the time of its execution to the bank, and the appellant must look to the lender of the money, which composed the old note, for the reclamation of the usury embraced in it, but whether such lender can be made liable for it to appellant, at this time, we do not decide.

It is, therefore, ordered that the judgment appealed from be reversed as to the appellee, A. H. Hargis, and affirmed as to the appellee, Hargis Commercial Bank, upon both the original and cross appeals, and the cause is remanded for other proper proceedings.